**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**COORSTEK, INC.**                                           **PLAINTIFF**

**V.**                                    **4:06CV001726 JMM**

**ELECTRIC MELTING SERVICES**
**COMPANY, INC.**                                          **DEFENDANT**

<u>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**</u>

Pending is the Defendant's Motion for Summary Judgment.  Plaintiff has responded and

the Defendant has replied.  For the reasons set forth below, the Motion is DENIED.

<u>Undisputed Facts</u>

Plaintiff CoorsTek, Inc. is a company that manufactures, assembles and sells ceramic

products.  In producing ceramic products, CoorsTek utilizes vacuum induction heating furnaces.

EMSCO is a company that engineers, manufactures and sells heat induction coils to be installed

within vacuum induction heating furnaces such as those owned by CoorsTek.

On July 13, 2002, EMSCO issued to CoorsTek a quotation for two vacuum induction

heating coils and two sets of magnetic shunts to be used within CoorsTek's existing furnaces and

power supply for the price of $211,620.00.  The July 13, 2002 EMSCO quotation contained

shipping and delivery terms, as well as an attachment entitled EMSCO's Standard Conditions.

The July 13, 2002 quotation was valid for 60 days.

On July 22, 2002, EMSCO issued to CoorsTek an updated quotation for two vacuum

induction heating coils and two sets of magnetic shunts to be used with CoorsTek's existing

PV/T furnace and power supply for the price of $152,740.00.  The July 22, 2002 EMSCO

updated quotation was identical in every way, except for price, to the July 13, 2002 EMSCO

quotation, including freight, shipping and EMSCO's Standard Conditions.  The July 22, 2002

EMSCO quotation was valid for 60 days.

On August 7, 2003, EMSCO issued to CoorsTek an updated quotation for one coil and one set of magnetic shunts for the price of $75,650.00.  The August 7, 2003 updated quotation included freight, shipping and EMSCO's Standard Conditions.  It made no reference to expiration.

On September 23, 2003, EMSCO issued to CoorsTek a quotation for two coils, two sets of magnetic shunts, and modifications to CoorsTek's coil carts; the first coil was priced at $83,290.00 and the second coil was priced at $44,580.00.  The September 23, 2003 quotation made no reference to expiration.

On November 18, 2003, EMSCO issued to CoorsTek an updated quotation for one 40" X 168" coil, one set of magnetic shunts, and cart modifications for the price of $66,632.00.  The November 18, 2003 updated quotation also stated that a second 40" X 168" coil, set of magnetic shunts, and cart modifications could be accomplished for the same price of $66,632.00.  The updated quotation contained EMSCO's Standard Conditions as an attachment, as well as a Copyright Statement.  It made no reference to expiration.

On January 9, 2004, in response to EMSCO's updated quotation of November 18, 2003, CoorsTek issued to EMSCO a purchase order (No. 90233342) for one 40" X 168" coil in the amount of $66,632.00, the same amount quoted by EMSCO in its November 18, 2003 updated quotation. The purchase order contained CoorsTek's Terms and Conditions of Purchase Order on the reverse side.

On or about January 21, 2004, EMSCO dispatched Mr. David Emmons to CoorsTek's facility to obtain information regarding the coil expansion project.

On February 20, 2004, EMSCO issued to CoorsTek a quotation for the installation of magnetic shunts for the price of $12,500.00.  The February 20, 2004 EMSCO quotation contained EMSCO's Standard Condition and a Copyright Statement.  There is no written purchase order from CoorsTek for the installation of magnetic shunts for the price of $12,500.00 in response to the February 20, 2004 quotation.

On April 16, 2004, EMSCO issued to CoorsTek an invoice for the installation of magnetic shunts for the price of $12,500.00.  The April 16, 2004, EMSCO invoice contained EMSCO's Standard Conditions on the reverse side.

On April 19, 2004, EMSCO issued an invoice for one coil, one set of shunts, and cart modification for the price of $66,632.00.  The April 19, 2004 EMSCO invoice contained EMSCO's Standard Conditions on the reverse side.

On May 3, 2004, Jimmy Horton of EMSCO faxed EMSCO's water diagram to Steve Brazil of CoorsTek.  EMSCO's water diagram contained the minimum flow requirements needed for CoorsTek's water supply to adequately cool the coils-50 gallons per minute at 30 pounds per square inch.  EMSCO's water diagram was used by CoorsTek as part of CoorsTek's installation of the first coil into the PV/T furnace.

On June 8, 2004, in response to EMSCO's updated quotation of November 18, 2003, CoorsTek issued to EMSCO a purchase order (No. 90246516) in the amount of $79,632.00 ($66,632.00 for the coil, magnetic shunts, and cart modification and $12,500.00 for the installation of the shunts).  CoorsTek's June 8, 2004 purchase order contained CoorsTek Terms and Conditions of Purchase Order on the reverse side.

On August 26, 2004, EMSCO issued to CoorsTek an invoice for one coil, one set of

shunts, and cart modifications for the price of $66,632.00.  The August 26, 2004 EMSCO

invoice contained EMSCO's Standard Conditions on the reverse side.  EMSCO issued to

CoorsTek another invoice on August 26, 2004, for the installation of magnetic shunts in the

amount of $12,500.00.  This invoice also contained EMSCO's Standard Conditions on the

reverse side.

There are no other written quotations, purchase orders, or invoices relating to the sale of

the two coils, magnetic shunts, cart modifications and installation of magnetic shunts.

EMSCO's water diagram was also used by CoorsTek as part of CoorsTek's installation

of the second coil into the TEK furnace.  On or about September 10, 2004, CoorsTek fired the

TEK furnace with the newly expanded coil for the first time.  In the process of starting the TEK

furnace, the furnace underwent a significant increase in pressure, resulting in a fire in the

furnace, rendering the TEK furnace inoperable.

After the fire of September 10, 2004, EMSCO and CoorsTek worked together to

determine the cause of the accident.  It was determined that CoorsTek's water supply had

provided significantly less water flow to the coil than that specified by EMSCO's water diagram,

resulting in the overheating of the coil, and the fire in the TEK furnace on September 10, 2004.

CoorsTek filed suit against EMSCO on December 27, 2006 for breach of contract,

negligence, and breach of warranties.  EMSCO filed this Motion for Summary Judgment on

November 14, 2007.

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial

courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there
> is a need for trial -- whether, in other words, there are genuine
> factual issues that properly can be resolved only by a finder of fact
> because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is
> discharged, and, if the record in fact bears out the claim that no
> genuine dispute exists on any material fact, it is then the
> respondent's burden to set forth affirmative evidence, specific
> facts, showing that there is a genuine dispute on that issue.  If the
> respondent fails to carry that burden, summary judgment should be
> granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

<u>Discussion of the Law</u>

5

EMSCO provided the coils from its branch facility located in Alabama and, thus, it's terms and conditions proposed that Alabama law control the transaction. CoorsTek's terms and conditions proposed that Colorado law control the transaction. "We apply the choice-of-law principles of Arkansas to determine which substantive law to apply." *Cotton v. Commodore Exp., Inc.,* 459 F.3d 862, 863-864 (8th Cir. 2006)(citing *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 928 (8th Cir. 1999)(stating that federal district courts apply the choice-of-law provisions of the state in which they sit in diversity cases)). Because these choice-of-law provisions conflict, the Court finds that there is no effective choice of law by the parties. *See e.g., Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923 (8th Cir. 1999).

In choice-of-law disputes for causes of action arising in contract, the Arkansas courts apply the law of the state with the most significant relationship to the issue at hand. *Ducharme v. Ducharme*, 316 Ark. 482, 872 S.W.2d 392 (1994). In cases involving an ineffective choice of law by the parties, the following factors are relevant to the determination of which state has the most significant relationship to a particular case: 1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; 5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Crisler v. Unum Insurance Co. of America*, 233 S.W.3d 658, 660 (Ark. 2006). "The state where the parties initiate and conduct negotiations weighs heavily in Arkansas courts' principal contacts analysis." *Heating & Air Specialists, Inc*., 80 F.3d at 930-931(citing *McMillen v. Winona Nat'l & Sav. Bank*, 648 S.W.2d 460, 462 (Ark. 1983)(finding the state where the parties initiated contact to be a significant factor)).

The parties agree that the sales calls, installation, service and operation of the coil in

question occurred in Arkansas.  Prior to the steam explosion in the TEK furnace, all contacts

between the parties occurred in Arkansas.  In the case of telephone or fax contact, at least one of

the participants was located in Arkansas.  CoorsTek operates at least one business site in

Arkansas.  It is unclear whether EMSCO has any facilities in the State.  Pursuant to the first four

factors of the significant relationship test, it is apparent that Arkansas has the most significant

relationship to this particular case.  For this reasons, the Court finds that the laws of Arkansas

govern this case.

The parties also agree that they are "merchants" for the purposes of Section 4-2-207 of

the Arkansas Code and the transaction at issue was a "sale of goods."  Section 4-2-207 of the

Arkansas Code (also referred to as UCC 2-207) provides the following:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is
> sent within a reasonable time operates as an acceptance even though it states terms
> additional to or different from those offered or agreed upon, unless acceptance is
> expressly made conditional on assent to the additional or different terms.

> (2) The additional terms are to be construed as proposals for addition to the contract.
> Between merchants such terms become part of the contract unless:

> (a) the offer expressly limits acceptance to the terms of the offer;
> (b) they materially alter it; or
> (c) notification of objection to them has already been given or is given within a
> reasonable time after notice of them is received.

> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to
> establish a contract for sale although the writings of the parties do not otherwise establish
> a contract.  In such case the terms of the particular contract consist of those terms on
> which the writings of the parties agree, together with any supplementary terms
> incorporated under an other provisions of this subtitle.

The parties agree that EMSCO's November 18, 2003 proposal, which was accompanied

by EMSCO's terms and conditions, was an offer.[1]  On January 9, 2004, CoorsTek issued a purchase order for the coil for the PV/T furnace.  Again on June 8, 2004, CoorsTek issued a purchase order for the coil, shunts, and cart modifications for the TEK furnace.  The CoorsTek purchase orders included CoorsTek's terms and conditions, which state: "Acceptance of this purchase order is expressly limited to the terms of this purchase order."  In response to CoorsTek's purchase order, EMSCO issued an Invoice which included the same terms and conditions as its November 18, 2003 offer.  There was no response from CoorsTek to the Invoice.  EMSCO manufactured and shipped the products.  CoorsTek accepted the products.

On facts similar to these, the Eighth Circuit in *White Consolidated Ind., Inc. v. McGill Manu. Co., Inc.*, 165 F.3d 1185 (8th Cir. 1999) found that the buyer did not assent to the seller's terms.  "Because the [seller] never assented to the additional terms, [the buyer], according to its own purchase order, did not accept [the seller's] offer.  Because there was no acceptance of the offer of sale, there was no contract at that time.  The district court recognized that the parties' performance of the sale, however, established a contract."  *White*, 165 F.3d at 1191.  The same is true in the instant case.  EMSCO did not accept CoorsTek's additional terms, therefore, CoorsTek did not accept EMSCO's offer.  Further, CoorsTek did not accept EMSCO's terms in the Invoice.  However, the sale was completed and the performance of the sale established a contract.

The Comment to § 2-207 (A.C.A. § 4-2-207) states:

Where clauses on confirming forms sent by both parties conflict each party must be

---

[1]  The Court finds that EMSCO's November 18, 2003 offer incorporates its previous quotations which memorialized the negotiated material terms, such as the item descriptions, shipping and payment terms.

assumed to object to a clause of the other conflicting with one on the confirmation sent by himself.  As a result the requirement that there be notice of objection which is found in subsection (2)(A.C.A. § 4-2-207(2)) is satisfied and the conflicting terms do not become a part of the contract.  The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by the Act, including subsection (2) (A.C.A. § 4-2-207(2)).

In addition to the choice of law provisions, the writings of the parties do not agree on the issues of warranty, which includes limitation period for institution of action and remedies, and insurance.  Accordingly, these provisions fall out of the contract and are replaced by the "gap-filler" provisions of the UCC where applicable.  *See also White*, 165 F.3d at 1192.  The gap-filling provisions of the UCC provide for the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.  *See* Ark. Code Ann. §§ 4-2-314, 4-2-315.  In addition, the UCC allows for recovery of incidental and consequential damages.  *See* Ark. Code Ann. §§ 4-2-714 and 4-2-715.  Therefore, these provision become part of the contract in this case.  There is no UCC provision regarding the liability of the insurance companies insuring the parties.  Thus, the insurance provision of the EMSCO offer merely falls out of the contract.

Defendant argues that the tacit agreement rule precludes the recovery of consequential damages in this case.  The tacit agreement rule does not apply to contracts involving the sale of goods, however.  *Robertson v. White,* 633 F. Supp. 954, 971 (W.D. Ark. 1986)(citing Note, "Tacit Agreement Rule Reaffirmed in Contract Cases in Arkansas," 32 Ark. L. Rev. 139 (1978)("In fact, it is a general rule of Arkansas contract law, *(except in sales of goods)*, that consequential damages for faulty performance are strictly limited to those which necessarily flow from the breach, or which were tacitly agreed-to by the breaching party.); Howard Brill, Law of Damages § 4.4 (5th ed. 2004)("Although the Uniform Commercial Code has rejected the tacit agreement doctrine, the Arkansas Supreme Court has continued to adhere to the doctrine in

non-Code contractual cases."). The parties have conceded that this case involves the sale of good.  Therefore, the recovery of consequential damages is not precluded by the tacit agreement rule in this case.

Finally, Defendant argues that it was under no legal duty to assess CoorsTek's water supply and therefore, CoorsTek cannot prevail on its negligence or breach of contract claim. The Court disagrees.  EMSCO was under a clear legal duty to provide CoorsTek with coils "for use with CoorsTek's existing Inductotherm 250 KW Power Supply and Control Unit and CoorsTek's existing water-cooled power cables."  ( Defendant's Ex. 2(c)).  The question of fact for the jury is whether EMSCO breached this duty.

For each of these reasons, the Court finds that the Defendant's Motion for Summary Judgment (Docket # 23) is DENIED.

IT IS SO ORDERED this 15th day of January 2008.

James M. Moody
United States District Judge